1    EDWARD J. FETZER, ESQ. (199879)
     Emerald Plaza Center
2    402 West Broadway, Suite 400
     San Diego, CA 92101
3    Tel. (619) 595-4833

4    Attorney for Debtors/Debtors-in-Possession
       LUKE & LEENA ZOUVAS
5

6

7

8                          **UNITED STATES BANKRUPTCY COURT**

9                             **Southern District Of California**

10                                              ) Case No.  13-06250-LT11
11   In re:                                     )
                                                ) CHAPTER 11
12   ZOUVAS, LUKE & LEENA                        )
                                                ) **DEBTORS' AMENDED DISCLOSURE**
13                        Debtor(s).            ) **STATEMENT AND PLAN OF**
                                                ) **REORGANIZATION, DATED 11/22/13**
14                                              )
                                                ) Confirmation Hearing:
15                                              )
                                                ) DATE:    January 15, 2014
16                                              ) TIME:    10:00 a.m.
                                                ) DEPT:    3
17                                              )
18                                              ) The Honorable Laura S. Taylor
                                                )
19                                              )
                                                )
20                                              )
                                                )
21   _____ )

22          The Debtors and Debtors-in-Possession LUKE & LEENA ZOUVAS (hereinafter, the

23   "Debtors") in the above-referenced case submit, pursuant to Section 1125 of the United States

24   Bankruptcy Code (11 U.S.C. section 101, *et seq.*, hereinafter, the "Code"), Federal Rule of

25   Bankruptcy Procedure ("FRBP") 3017(a), and Local Bankruptcy Rule ("LBR") 2002-1(e), the

26   following AMENDED DISCLOSURE STATEMENT & PLAN OF REORGANIZATION and

27   respectfully represents as follows:

28
     DEBTORS' COMBINED
       DISCLOSURE STATEMENT & PLAN                    -1-
                                                       .

## PART I:

## INTRODUCTION

LUKE & LEENA ZOUVAS (hereinafter, the "Debtors") are the Debtors in this Chapter 11 bankruptcy case.  On 06/16/13, Debtors commenced a bankruptcy case by filing a voluntary petition under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of California.  This is Debtors' Combined Chapter 11 Disclosure Statement and Plan of Reorganization (hereinafter, the "Plan").  This Plan describes how each creditor's claim will be treated if the Plan is confirmed.

Section 1 contains the treatment of administrative claims.  Section 2 contains the treatment of priority claims.  Section 3 contains the treatment of creditors with secured claims (*i.e.* Class 1 claims.)  Section 4 contains the treatment of general unsecured creditors (*i.e.* Class 2 claims.) Section 5 contains the treatment of pre-confirmation arrears to be cured through the Plan on assumed executory contract (*i.e.* Class 3 claims.)  Attached to the Plan are exhibits containing financial information that may help you decide how to vote and whether to object to confirmation. Exhibit 1 includes background information regarding Debtor, the events that led to the filing of the bankruptcy petition, a description of significant events that have occurred during this bankruptcy and a summary of this Chapter 11 Plan.  Exhibit 2 contains an analysis of how much creditors would likely receive in a Chapter 7 liquidation.  Exhibit 3 shows Debtors' projected post-confirmation income and expenses.  Exhibit 4 describes how much Debtor is required to pay on the effective date of the plan.

Most creditors (those in impaired classes) are entitled to vote on confirmation of the Plan. Completed ballots must be received by Debtors' counsel, and objections to confirmation must be filed and served, no later than **December 27, 2013**.  The court will hold a hearing on confirmation of the Plan on **01/15/13** at **10:00 a.m**.

Whether the Plan is confirmed is subject to complex legal rules that cannot be fully described here.  YOU ARE STRONGLY ENCOURAGED TO READ THE PLAN CAREFULLY AND TO CONSULT AN ATTORNEY TO HELP YOU DETERMINE HOW TO VOTE AND WHETHER TO

DEBTORS' COMBINED
DISCLOSURE STATEMENT & PLAN                    -2-

OBJECT TO CONFIRMATION OF THE PLAN.

If the Plan is confirmed, the payments promised in the Plan constitute new contractual obligations that replace the Debtors' pre-confirmation debts.  The Plan payments shall begin on the Effective Date as defined in Section 8(a).  Creditors may not seize their collateral or enforce their pre-confirmation debts so long as Debtors perform all obligations under the Plan.  If Debtors default in performing Plan obligations, any creditor can file a motion to have the case dismissed or converted to a Chapter 7 liquidation, or enforce their non-bankruptcy rights.  Debtors will be discharged from all pre-confirmation debts (with certain exceptions) if Debtors makes all Plan payments.  Enforcement of the Plan, discharge of the Debtors, and creditors' remedies if Debtors default are described in detail in Sections 6 and 7 of the Plan.

## PART II:

## CLASSIFICATION AND TREATMENT OF CLAIMS

Section 1: Administrative Claims

1(a)    Professional Fees.

Debtor will pay the following professional fees in full on the Effective Date, or upon approval by the court, whichever is later.

| Name and Role of Professional | Estimated Amount |
|---|---|
| Edward J. Fetzer, Esq | $5,000.00 |

The following professionals have agreed to accept payment over time as follows.  Payments will be made monthly, due on the first day of the month, starting on or after the Effective Date of the Plan, or upon approval by the Court, whichever is later.

| Name and Role of Professional | Estimated Amount | Payment Amount | Number of Payments |
|---|---|---|---|
| Edward J. Fetzer, Esq. | $10,000.00 | $892.00 | 12 |

Professionals may not take collection action against Debtor so long as Debtors are not in material default under the Plan (defined in Section 7(c)).  **Estate professionals are not entitled to vote on confirmation of the Plan.**

1(b)    <u>Post-Confirmation Compensation of Professional Persons</u>.

Compensation for services rendered and for reimbursement of expenses by a professional person after the Effective Date need not be approved by the Bankruptcy Court.  Professional persons may invoice the reorganized Debtors (or other responsible third-party) directly, and reorganized Debtors (or other responsible third-party) may pay such invoices without further order from the Bankruptcy Court.

1(c)    <u>Other Administrative Claims</u>.

Debtors are informed and believe that there are no other administrative claims.

1(d)    <u>United States Trustee Fees</u>.

All fees payable to the United States Trustee as of confirmation will be paid on the Effective Date; post-confirmation fees to the United States Trustee will be paid when due.


<u>Section 2: Priority Claims</u>

2(a)    <u>Tax Claims</u>.

The Debtors will pay claims entitled to priority under §507(a)(8) in full over time at the non-bankruptcy statutory interest rate in equal amortized payments in accordance with §511.  Payments will be made quarterly, due on the first day of the quarter, starting on the first such date after the Effective Date and ending on the last such date that is no more than 5 years after the entry of the order for relief.  Payment of priority tax claims in full within 5 years of the petition date and on terms not less favorable than those accorded the most favored non-priority creditor is required by §1129(a)(9)(C).

Priority tax creditors may not take any collection action against Debtors so long as Debtors are not in material default under the Plan (defined in Section 7(c)).  **Priority tax claimants are not entitled to vote on confirmation of the Plan.**

| Name of Creditor | Estimated Amount of Claim | Statutory Interest Rate | Payment Amount | Number of Payments |
|---|---|---|---|---|
| Franchise Tax Board | $1,043.00 | 4.00% | $1,043.00 | 1 |

2(b)    <u>Unsecured Domestic Support Obligation Claims Entitled to Priority under §507(a)(1)</u>.

        Debtors are informed and believe that there are no domestic support obligation claims.

2(c)    <u>Wage and Commission Claims Entitled to Priority under §507(a)(4)</u>.

        Debtors are informed and believe that there are no wage or commission claims.

<u>Section 3: Secured Creditors</u>

3(a)    <u>Debtors to Make Regular Payments and Pay Arrears over Time</u>.

| Class | Name of Creditor | Collateral | Regular Monthly Payment | Estimated Arrears | Interest Rate on Arrears | Monthly Payment on Arrears |
|-------|------------------|------------|------------------------|-------------------|--------------------------|----------------------------|
| 1A | One West Bank, FSB | 977 Windflower Way, San Diego, CA 92106 | $8,775.00 | $118,157.38 | 4.25% | Monthly interest-only payments, then lump sum cure payment on 60th month |

        Debtors will pay the entire amount contractually due by making all post-confirmation regular monthly payments, and by making monthly interest-only payments on pre-petition arrears at a 4.25% interest rate, then by paying all pre-petition arrears (including attorney's fees and late charges) in a single lump-sum cure payment, due the first day of the 60th month from the Effective Date of the Plan on the above secured claim. The Zouvas Family Trust has agreed to provide Debtors with sufficient funds to make the aforementioned lump-sum payment secured by a third deed of trust lien on Debtors' commercial property located at 2368 Second Avenue, San Diego, CA at the time such funds are advanced to Debtors. To the extent arrears are determined to be other than as shown above, appropriate adjustments will be made in the lump-sum payment. Creditors in these classes shall retain their interest in the collateral until paid in full.

        The creditor in this class may not repossess or dispose of their collateral so long as Debtors are not in material default under the Plan (defined in Section 7(c)). **This secured claim is impaired and entitled to vote on confirmation of the Plan.**

3(b)    <u>Creditors' Rights Remain Unchanged</u>.

| Class | Name of Creditor | Description of Collateral |
|-------|------------------|---------------------------|
| 1B | Wells Fargo Bank, N.A. | 2368 Second Avenue, San Diego, CA |

The creditor's legal, equitable, and contractual rights remain unchanged with respect to the above collateral.  The confirmation order will constitute an order for relief from stay.  The creditor in this class shall retain its interest in the collateral until paid in full.  **This secured claim is not impaired and is not entitled to vote on confirmation of the Plan.**

3(c)    <u>Debtor to Strip off Lien</u>.

| Class | Name of Creditor | Collateral | Amount Due |
|-------|------------------|------------|------------|
| 1C | RBS Citizens, N.A. (servicing agent Green Tree Servicing LLC) | 977 Windflower Way, San Diego, CA 92106 | $253,361.72 |

Prior to confirmation, Debtors shall have obtained an order(s) or stipulation(s) fixing the secured amount of the above creditors' claims at zero.  Debtors will pay nothing to those creditors as secured claims.  Any claim of a creditor whose lien is stripped is a general unsecured claim treated in Section 4.

The creditors in this class may not repossess or dispose of their collateral so long as Debtors are not in material default under the Plan (defined in Section 7(c)).  **This claim is impaired and is entitled to vote on confirmation of the Plan.**

3(d)    <u>Debtor to Adjust Terms and Pay Amount Due in Full Over Time</u>.

| Class | Name of Creditor | Collateral | Amount Due | Interest Rate | Monthly Payment | Term |
|-------|------------------|------------|------------|---------------|-----------------|------|
| 1d | Zouvas Family Trust | 2368 Second Avenue, San Diego, CA | $440,000.00 | 0% | see below | see below |

The Zouvas Family Trust[1] has agreed to defer the entire amount contractually due during the life of the Plan on the above secured claims.  Debtors will recommence their regular monthly payments starting on the first day of the first month after their completion of the Plan and will pay the entire amount contractually due in full over time under the same terms provided by the underlying loan documents.  The creditors in this class shall retain its interest in the collateral and

---

[1] The Zouvas Family Trust, dated October 9, 1985, is Debtor's <u>parents'</u> living trust.  Debtor is a 1/15th beneficiary (along with Debtor's siblings and grandchildren) and does not receive any benefits until the death of both Debtor's parent.

may not repossess or dispose of their collateral so long as Debtors are not in material default under the Plan (defined in Section 7(c)).  **The secured claim is impaired and is entitled to vote on confirmation of the Plan.**

Payments to claimants in this class may continue past the date Debtors obtain a discharge. The claimant's rights against its collateral shall not be affected by the entry of discharge, but shall continue to be governed by the terms of this Plan.

3(e)    Deadline for § 1111(b) Election.

Creditors with an allowed secured claim must make an election under 11 U.S.C. § 1111(b) no later than 14 days after service of the notice of hearing of this proposed Plan and conditionally approved disclosure statement.


Section 4: Treatment of General Unsecured Creditors

4(a) Class 2(A).  Small Claims.

This class includes any creditor whose allowed claim is $7,500.00 or less, and any creditor in Class 2(B) whose allowed claim is larger than $7,500.00 but agrees to reduce its claim to $7,500.00.  Each creditor will receive on the Effective Date of the Plan a single payment equal to the lesser of its allowed claim or $750.00.

Creditors in this class may not take any collection action against Debtors so long as Debtors are not in material default under the Plan (defined in Section 7(c)).  **Claimants in this class are impaired and are entitled to vote on confirmation of the Plan, <u>unless their claims are paid in full on the Effective Date of the Plan</u>.**

4(b) Class 2(B). General Unsecured Claims.

This class includes all known non-priority unsecured creditors, including deficiency claims, and rejection claims, whether scheduled or based on proofs of claim on file excluding those in Class 2(A).  Allowed claims of general unsecured creditors (not treated as small claims, including allowed claims of creditors whose executory contracts or unexpired leases are being rejected under this Plan) receive a prorata share of $35,680.00 on their allowed claim.  Debtors estimate that the

amount of non-priority unsecured claims (including the stripped residential junior lien) is approximately $1,194,919.40.  Depending on the resolution of Debtors' disputed claims, such prorata distribution may result in non-priority unsecured creditors receiving between 2% to 10% of their allowed claim.  See Section 5(c), below.

Creditors in this class may not take any collection action against Debtors so long as Debtors are not in material default under the Plan (defined in Section 7(c)).  **This class is impaired and is entitled to vote on confirmation of the Plan.**  Debtors have indicated Section 8(b), below, whether a particular claim is disputed.

## PART III:

## EXECUTORY CONTRACTS, UNEXPIRED LEASES, DISPUTED CLAIMS & OTHER CLAIMS

Section 5: Executory Contracts and Unexpired Leases

5(a)    Executory Contracts/Unexpired Leases Assumed.

Debtor assumes the following executory contracts and/or unexpired leases upon Effective Date of this Plan and will perform all pre-confirmation and post-confirmation obligations thereunder. Post-confirmation obligations will be paid as they come due.  Pre-confirmation arrears to be cured will be paid in 3 equal quarterly installments beginning on the first day of the first month after all administrative and priority claims are paid in full.

| Class | Name of Counter-Party | Description of Contract/Lease | Estimated Total Cure Amount | Cure Installment Amount | Number of Installments |
|-------|----------------------|-------------------------------|------------------------------|--------------------------|--------------------------|
| 3A | Daimler Trust | motor vehicle lease for 2010 Mercedes-Benz GL Class Utility 4D GL550 4WD | n/a | n/a | n/a |
| 3B | Daimler Trust | motor vehicle lease for 2011 Mercedes-Benz S Class Sedan 4D S550 | $4,513.65 (plus 7% interest) | $892.00 | 6 |

5(b)    Executory Contracts/Unexpired Leases Rejected.

Debtor rejects all executory contracts and/or unexpired leases not previously assumed or listed in Section 5(a), above, as of the Effective Date of this Plan and surrenders any interest in the

affected property, and allows the affected creditor to obtain possession and dispose of its property, without further order of the court.  Claims arising from rejection of executory contracts or unexpired leases have been included in Section 4 (general unsecured claims).  Each entity that is a party to an executory contract or unexpired lease rejected pursuant to this Plan shall be entitled to file a proof of claim for damages alleged to arise from such rejection not later than 30 days after the Effective Date.

5(c)    Disputed Claim Reserve.

Debtor disputes the following claims:

| Class | Name of Creditor | Amount According to Creditor | Amount According to Debtor |
|-------|------------------|------------------------------|----------------------------|
| 4a | Robert Thayer | $765,000.00 (joint & severally) | $0.00 |
| 4b | Social Media Ventures, Inc. | $765,000.00 (joint & severally) | $0.00 |
| 4c | Joseph B. Larocco | $765,000.00 (joint & severally) | $0.00 |
| 4d | Ironshore Indemnity, Inc. | TBD | $0.00 |

These disputed claims were being litigated in state court when Debtors filed the above-captioned Chapter 11 case.  See Thayer, et al. v. Zouvas (San Diego Superior Court Case # 37-2012-00097720, professional liability action), Ironshore v. Zouvas (San Diego Superior Court Case # 37-2013-00050288, declaratory relief and reimbursement claim in connection with insurance coverage for Thayer, et al. v. Zouvas case).  These cases are currently stayed as a result of Debtors' bankruptcy filing.  Debtors shall create a reserve for disputed claims in the amount of the claim unless the claim is estimated for distribution in a different amount under 11 U.S.C. §502(c).  As described in Exhibit 1, hereto, after the Franchise Tax Board priority claim and the Class 3B claim (Daimler Trust vehicle arrears) are paid in full, Debtors must place into a reserve $410.00 per month until all disputed claims are settled or resolved.  If a disputed claim becomes an allowed claim, Debtor must distribute to the claimant from the reserve an amount equal to all distributions due to date under the plan calculated using the amount of the allowed claim.  Any funds no longer

needed in reserve must be distributed pro-rata among allowed claims in the same class.

5(d)    Lawsuits and Other Claims for Relief.

Debtors are informed and believe that there are no causes of action for fraudulent transfers, voidable preferences, or other claims for relief exist against the other parties.  Without limiting the foregoing, Debtors retain all causes of action that they have against any party, whether arising pre- or post-petition, and all such causes of action vests in the Reorganized Debtor on the Effective Date.  The nondisclosure of unknown causes of action is not a settlement, compromise, waiver or release of such cause of action, and does not judicially estop the Debtors from asserting any such cause of action as a claim or defense.  Confirmation of the Plan affects no settlement, compromise, waiver or release of any cause of action unless the Plan or Confirmation Order specifically and unambiguously so provide.

## PART IV:

## GENERAL PROVISIONS

Section 6: Discharge and Other Effects of Confirmation

6(a)    Discharge.

The Debtors shall receive a discharge when the Court grants a discharge on completion of all payments under this Plan or when otherwise authorized under the Bankruptcy Code.  Pursuant to Bankruptcy Code Section 524, the discharge (i) voids any judgment at any time obtained to the extent that such judgment is a determination of the personal liability of the Debtors with respect to any debt discharged under Bankruptcy Code Section 1141, whether or not discharge of such debt is waived, (ii) operates as an injunction against the commencement or continuation of an action, employment of process, or an act to collect, recover or offset any such debt as a personal liability of the Debtors, whether or not discharge of such debt is waived, and (iii) operates as an injunction against the commencement or continuation of an action, employment of process, or an act to collect or recover from, or offset against, community property of the Debtors acquired after the petition date on account of an allowable community claim, except as to certain non-dischargeable community claims.

DEBTORS' COMBINED
 DISCLOSURE STATEMENT & PLAN                    -10-

Except as otherwise provided in the Plan, the rights afforded in the Plan shall be in exchange for and in complete satisfaction, discharge, and release of all claims of any nature or kind whatsoever, including any interest accrued thereon, from and after the confirmation date of the Plan, against the Debtors and any of their assets or properties.  The discharge and release is intended to be as broad as permissible by the Bankruptcy Code and will forever bar any claim, suit, demand, or action by any person on account of a claim which arose prior to confirmation of the Plan.  The discharge will affect all claims held by third parties as of the confirmation date of the Plan.  It will not affect or modify the rights granted to Creditors pursuant to the Plan.  Upon any subsequent default under the Plan, creditors' claims allowed and treated under the Plan shall not be discharged pursuant to the Plan; however, if the case is converted to a case under Chapter 7, a discharge may nevertheless be granted.

6(b)    <u>Vesting of Property</u>.

On the Effective Date, all property of the estate and interests of the Debtor will vest in the reorganized Debtor pursuant to § 1141(b) of the Bankruptcy Code free and clear of all claims and interests except as provided in this Plan, subject to revesting upon conversion to Chapter 7 as provided in Section 7(e) below.

6(c)    <u>Plan Creates New Obligations</u>.

Except as provided in Sections 6(d) and 7(d), the obligations to creditors that Debtor undertakes in the confirmed Plan replace those obligations to creditors that existed prior to the Effective Date of the Plan.  Debtor's obligations under the confirmed Plan constitute binding contractual promises that, if not satisfied through performance of the Plan, create a basis for an action for breach of contract under California law.  To the extent a creditor retains a lien under the Plan, that creditor retains all rights provided by such lien under applicable non-Bankruptcy law.

6(d)    <u>Claims not Affected by Plan</u>.

Upon confirmation of the Plan, and subject to Section 6(c), any creditor whose claims are left unimpaired under the Plan may, notwithstanding Sections 7(a), 7(b), 7(c), and 7(d) below, immediately exercise all of its contractual, legal, and equitable rights, except rights based on default of the type that need not be cured under 11 U.S.C. §§ 1124(2)(A) and (D).

6(e)    <u>Tax Consequences of the Plan</u>.

ANY PERSON CONCERNED WITH THE TAX CONSEQUENCES OF THE PLAN SHOULD CONSULT WITH HIS/HER OWN ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS TO DETERMINE HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY.  It is not practical or necessary to present a detailed explanation of the federal income tax aspects of the Plan or the related bankruptcy tax matters involved in this Chapter 11 case.  Debtors are unaware of any material adverse tax consequences of the Plan to themselves or to creditors.  In general, creditors may realize taxable income with respect to some or all of their claims when paid, unless income on account of such payment already has been recognized.  The tax consequences resulting from the Plan to each individual Creditor should not vary significantly from the past tax consequences realized by each individual Creditor.  To the extent that the tax consequences do vary for individual creditors, each one is urged to seek advice from their own counsel or tax advisor with respect to the state or federal tax consequences resulting from the confirmation of the Plan. The Debtors CANNOT and DO NOT represent that the tax consequences discussed above are the only tax consequences of the Plan because the Tax Code (26 U.S.C. section 1, *et seq.*) and related regulations embody many complicated rules which make it difficult to completely and accurately state all of the tax implications of any action or transaction.

6(f)    <u>Risk Factors</u>.

There is a risk that the earnings of Debtor Luke Zouvas, earned through his law practice, The Zouvas Law Group P.C. ("ZLG"), may fluctuate substantially from month to month.  Moreover, Debtors' income may decline in the future. The assumptions made in this Disclosure Statement concerning the Plan are based upon ZLG averages from 2011 through June 2013 and the best information available to the Debtors at this time.  Overall, the Debtors believe that they will earn enough income during the busiest months of the year in order to enable them to meet the payments required by their Plan during slower months of the year.  The Debtors reserve the right to revise the information contained herein as more accurate information becomes available.

In addition, the listing of a particular claim for a specific amount in this Disclosure Statement is not an admission by the Debtors as to either liability or amount, and the Debtors reserve the right

to object to any and all claims in accordance with the Plan.  Specifically, Debtors' objections to the disputed claims listed Section 5(c), above, and the ultimate resolutions thereof will affect the prorata distribution to non-priority unsecured creditors and may increase administrative costs in this case.

## Section 7: Remedies If Debtor Defaults in Performing the Plan

7(a)    Creditor Action Restrained.

The confirmed Plan is binding on every creditor whose claims are provided for in the Plan. Therefore, even though the automatic stay terminates on the Effective Date with respect to secured claims, no creditor may take any action to enforce either the pre-confirmation obligation or the obligation due under the Plan, so long as Debtor is not in material default under the Plan, except as provided in Section 6(d) above.

7(b)    Obligations to Each Class Separate.

Debtors' obligations under the Plan are separate with respect to each class of creditors. Default in performance of an obligation due to members of one class shall not by itself constitute a default with respect to members of other classes.  For purposes of this Section 7, the holders of all administrative claims shall be considered to be a single class, the holders of all priority claims shall be considered to be a single class, and each non-debtor party to an assumed executory contract or lease shall be considered to be a separate class.

7(c)    Material Default Defined.

If Debtors fail to make any payment, or to perform any other obligation required under the Plan, for more than 14 days after the time specified in the Plan for such payment or other performance, any member of a class affected by the default may serve upon Debtors and Debtors' attorney (if any) a written notice of Debtors' default.  If Debtors fail within 14 days after the date of service of the notice of default either: (i) to cure the default; (ii) to file and serve a motion for an extension of time to cure the default; or (iii) to file and serve a motion for a determination that no default occurred, then Debtors are in Material Default under the Plan to all the members of the affected class.

DEBTORS' COMBINED
 DISCLOSURE STATEMENT & PLAN                    -13-

7(d)    Remedies Upon Material Default.

Upon Material Default, any member of a class affected by the default: (i) may file and serve a motion to dismiss the case or to convert the case to Chapter 7; or (ii) without further order of the Court has relief from stay to the extent necessary, and may pursue its lawful remedies to enforce and collect Debtor's obligations under the Plan.

7(e)    Effect of Conversion to Chapter 7.

If the case is at any time converted to one under Chapter 7, property of the Debtors shall vest in the Chapter 7 bankruptcy estate to the same extent provided for in 11 U.S.C. § 348(f) upon the conversion of a case from Chapter 13 to Chapter 7.

7(f)    Retention of Jurisdiction.

The bankruptcy court retains jurisdiction over proceedings concerning: (i) whether Debtors are in Material Default of any Plan obligation; (ii) whether the time for performing any Plan obligation should be extended or modified; (iii) adversary proceedings and contested matters pending as of the Effective Date or specifically contemplated in this Plan to be filed in this Court (see Section 8(f), below); (iv) whether the case should be dismissed or converted to one under Chapter 7; (v) any objections to claims; (vi) compromises of controversies under Fed. R. Bankr. Proc. 9019; (vii) compensation of professionals; and (viii) other questions regarding the interpretation and enforcement of the Plan.


Section 8: Other Provisions

8(a)    Effective Date of Plan.

The Effective Date of the Plan is the fifteenth day following the date of the entry of the order of confirmation.  If a notice of appeal has been filed, Debtor may waive the finality requirement and put the Plan into effect, unless the order confirming the Plan has been stayed.  If a stay of the confirmation order has been issued, the Effective Date will be the first day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

8(b)    <u>Cramdown</u>.

Pursuant to 11 U.S.C. § 1129(b), Debtors reserve the right to seek confirmation of the Plan despite the rejection of the Plan by one or more classes of creditors.  The Debtors' ability to "cramdown" this Plan over the objections of creditors may be affected, in part, by how the Bankruptcy Court rules on the applicability of the "Absolute Priority Rule" in this case.  The Absolute Priority Rule provides, in essence, that junior claimants, including the Debtor, are barred from taking anything under the Plan unless senior claimants are paid in full.  Currently, the law as to whether the Absolute Priority Rule applies to individual Chapter 11 debtors is unsettled.  There are three major appellate level decisions (none binding on this Court) that have analyzed whether amendments to the Bankruptcy Code in 2005, served to exempt individual Chapter 11 debtors from the requirements of the Absolute Priority Rule. They are the Fourth Circuit Court of Appeal's decision in <u>In re Maharaj</u>, 681 F.3d 558 (4th Cir. 2012), the Tenth Circuit Court of Appeal's decision in <u>In re Stephens</u>, 704 F.3d. 1279 (10th Cir. 2013); and, the Ninth Circuit Bankruptcy Appellate Panel's decision in <u>In re Friedman</u>, 466 B.R. 471 (9th Cir. BAP 2012).

In the present case, Debtors do retain non-exempt property and propose to pay less than 100% of claims.  However, because Debtors propose to "pay" for their non-exempt property in the amount of at least $118,157.38 (<u>see</u> Section 3(a), above), they are not retaining equity in such property on account of their junior interest.  Since the Plan requires Debtors to make a "new value" contribution of at least $118,157.38, the issue of whether or not the Absolute Priority Rule is applicable in this case does <u>not</u> need to be litigated.  <u>See</u> 11 U.S.C. § 1129(b)(2)(B)(ii) and Exhibit 1, attached hereto.

8(c)    <u>Modification of Plan</u>.

The Debtors may modify the Plan at any time before confirmation.  However, the Court may require a new disclosure statement and/or re-balloting on the Plan if such modification is sought. The Debtors may also seek to modify the Plan at any time after confirmation so long as the Plan has not been substantially consummated, and if the Court authorizes the proposed modifications after notice and a hearing.

8(d)    <u>Post-Confirmation Status Reports and Final Decree</u>.

The Debtors shall file status reports with the Court on a quarterly basis after entry of the confirmation order, describing the progress toward consummation of the Plan.  The status reports shall be served on, among others, counsel for the United States Trustee.  When the Plan is fully administered in all material respects, the Debtors shall file an application for a final decree and a proposed final decree closing this case.  A final decree may be issued notwithstanding that future payments remain due under the Plan.

8(e)    <u>Severability</u>.

If any provision in the Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

8(f)    <u>Governing Law</u>.

Except to the extent a federal rule of decision or procedure applies, the laws of the State of California govern the Plan.

8(g)    <u>Notices</u>.

Any notice to the Debtors must be in writing, and will be deemed to have been given three days after the date sent by first-class mail, postage prepaid and addressed as follows:

EDWARD J. FETZER, ESQ.
Emerald Plaza Center
402 West Broadway, Suite 400
San Diego, CA 92101

Mr. & Mrs. Luke Zouvas
977 Windflower Way
San Diego, CA 92106

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

DEBTORS' COMBINED
 DISCLOSURE STATEMENT & PLAN                    -16-

8(h)    <u>Post-Confirmation United States Trustee Fees</u>.

Following confirmation, Debtors must continue to pay quarterly fees to the United States Trustee to the extent, and in the amounts, required by 28 U.S.C. § 1930(a)(6).  So long as Debtors are required to make these payments, Debtors must file with the Court quarterly reports in the form specified by the United States Trustee for that purpose.

Dated:  11/22/13            ___/s/ Luke Zouvas_____
                            Debtor

                            ___/s/ Leena Zouvas_____
                            Joint-Debtor

                            ___/s/ Edward J. Fetzer_____
                            Edward J. Fetzer, Esq., Attorney for
                            Debtors/Debtors-in-Possession LUKE &
                            LEENA ZOUVAS

DEBTORS' COMBINED
 DISCLOSURE STATEMENT & PLAN            -17-

**EXHIBIT 1 - EVENTS THAT LED TO BANKRUPTCY, SUMMARY OF PLAN**
<u>In re: ZOUVAS</u>, Chapter 11 Case No. 13-06250-LT11 (Bankr.Cal.S.D.)

<u>Events that Led to Bankruptcy</u>

In 2010, Debtor's former law firm, Applbaum & Zouvas, dissolved and Debtor started his present securities law practice as the Zouvas Law Group, P.C. ("ZLG").  This unplanned dissolution and starting a new law firm was costly and included expenses for administrative costs, employees, business taxes, rent/mortgage, and other typical expenses associated with running a law firm. For a period of time, ZLG was successful - however, due to the area of Debtor's law practice, monthly Income fluctuated. Nonetheless, ZLG grew its client base and increased its staff to ensure that its clients were provided proper service.

During 2012 and the first half of 2013, business was robust and ZLG had consistent income.  However, an increase of clients not paying regular monthly retainers and increased expenses caused more financial hardship than anticipated. As a result, Debtor's monthly income from his law firm decreased and Debtor suffered significant financial hardship to stay current on Debtor's family's personal bills and expenses.

<u>Summary of Plan</u>

Since Debtors filed their bankruptcy case in June 2013, ZLG income has met projected levels, in part because of ZLG clients paying past due balances, as well as ZLG having been hired for two large projects with those clients paying retainer fees.  The Debtors' projected plan payments are based upon average net income earned from ZLG from 2011 through June 2013 and the best information available to the Debtors at this time.  <u>See</u> Exhibit 3, Second Amended Schedule I, filed concurrently herewith.  While Debtors' net income may fluctuate from month to month, overall, the Debtors believe that they will earn enough income during the busiest months of the year in order to enable them to meet the payments required by their Plan during slower months of the year.

The Plan contemplates that Debtors will pay all Allowed Secured Claims in full and will pay between 2% to 10% of general unsecured claims.  Debtors must remain current on all post-confirmation obligations while using the proceeds from the Debtors' income generated after the petition date to treat unsecured creditors' claims pursuant to the Plan.

The distribution of Debtors projected 60 Plan payments of $1,310.00/month is summarized on the chart on the following page:

| CLAIM | PAYMENT | Month 1 - 12 | Month 13 - 18 | Month 19 - 59 | Month 60 | TOTAL PAID: |
|---|---|---|---|---|---|---|
| Administrative Claims (Pursuant to Section 1 of Plan) | $5000.00 lump-sum on Effective Date, then $892.00/mo. for approximately 12 months | Professional fees pursuant to fee applications to be filed in this case, presently estimated to be approximately $10,000.00. | n/a | n/a | n/a | Approx. $15,000.00 (pursuant to fee applications to be filed) |
| Franchise Tax Board (Pursuant to Section 2(a) of Plan) | $1,043.00 lump-sum on Effective Date | n/a | n/a | n/a | n/a | $1,043.00 |
| Daimler Trust (Pursuant to Section 5(a) of Plan) | $892.00/mo. for 6 months | n/a | Daimler Trust auto arrears in the amount of $4,513.65 @ 7% interest, for six months following payment of administrative claims | n/a | n/a | $4,829.61 |
| Disputed Claim Reserve/ General Unsecured (Pursuant to Section 4 and 5(c) of Plan) | $892.00/mo. for 40 months | n/a | n/a | Disputed claim reserve ($892.00/month for 40 months.) Total payments to general unsecured creditors $35,680.00 depending on dispute claim settlement. | n/a | $35,680.000 |
| One West Bank (Pursuant to Section 3(a) of Plan) | Monthly interest only (4.25%) payments of $418.00/mo. during Plan, plus "new value" lump-sum payment of $118,157.38 | $418.00/mo. | $418.00/mo. | $418.00/mo. | $118,157.38 lump sum to One West Bank for residential arrears in month 60 of Plan | $118,157.38 |

- <u>Administrative Claims</u>: On or about 11/14/13, Debtors' counsel, Edward J. Fetzer, filed his First Application for Interim Professional Compensation.  <u>See</u> Docket Entry # 93.  Subject to Court approval of Debtors' counsel's fee applications, the Plan provides that Debtor's counsel shall receive a single lump-sum payment in the amount of $5,000.00 on the Effective Date and, thereafter, $892.00/mo. until all remaining administrative claims are paid in full.

- <u>Priority Tax Claims</u>: On or about 09/24/13, the Franchise Tax Board filed a priority tax claim in the amount of $1,043.00 for 2011 personal income tax liability.  The Bankruptcy Code requires that each holder of such a 507(a)(8) priority tax claim receive the total value of such claim in deferred cash payments, over a period not exceeding five years from the petition date and in a manner not less favorable than the most favored non-priority unsecured claim provided for by the Plan.  The Plan provides that the County of San Diego shall receive a single lump-sum payment in the amount of $1,043.00 on the Effective Date, thereby paying such claim in full.

[Note: On or about 11/14/13, the County of San Diego withdrew its Claim # 11 for residential real property taxes.  <u>See</u> Docket Entry # 92.]

- <u>Automobile Arrears</u>: The Plan provides that the Daimler Trust shall retain its security interest in Debtors' 2011 Mercedes-Benz S Class Sedan 4D S550 and Debtors shall continue making their post-petition monthly payments to Daimler Trust pursuant to the terms of the original loan documents.  In addition, Daimler Trust shall receive monthly cure payments in the amount of $892.00/ to cure pre-petition arrears.  Debtors estimate that 6 monthly payments will be sufficient to cure all pre-petition arrears, which payments include interest at the rate of 7% percent per annum.  Except to the extent that an agreement between the Debtors and Daimler Trust provides otherwise, monthly payments shall commence on the first day of the 13th month of the Plan or after all administrative claims and priority claims are paid in full, whichever is later.  Payments shall continue each month thereafter until all pre-petition arrears are cured.

- <u>Disputed Claim Reserve/General Unsecured</u>:  After Daimler Trust pre-petition vehicle arrears are cured, Debtors must place into a reserve $892.00 per month until all disputed claims listed in Section 5(c) are settled or resolved.  If a disputed claim becomes an allowed claim, Debtor must distribute to the claimant from the reserve an amount equal to all distributions due to date under the plan calculated using the amount of the allowed claim.  Any funds no longer needed in reserve must be distributed pro-rata among allowed claims in the same class.  Depending on the resolution of Debtors' disputed claims, non-priority unsecured creditors will receive a prorata distribution of approximately $35,680.00 which may result in such creditors receiving between 2% to 10% of their allowed claims.

- <u>Lump-Sum Cure of Pre-Petition Home Mortgage Arrears</u>:  The Zouvas Family Trust, dated October 9, 1985, has agreed to provide Debtors with sufficient funds to cure their pre-petition home mortgage arrears to be secured by a third deed of trust lien on Debtors' commercial property located at 2368 Second Avenue, San Diego, CA at the time such funds are advanced to Debtors.  The Zouvas Family Trust is Debtor's <u>parents</u>' living trust.  Debtor is a 1/15th beneficiary (along with Debtor's siblings and grandchildren) and does not receive any benefits until the death of both Debtor's parent. During the Plan, Debtors must continue making their post-petition monthly payments to One West Bank (serviced by Green Tree Servicing LLC) pursuant to the terms of the

original loan documents and interest-only payments on pre-petition arrears at 4.25% interest.  On the first day of the 60th month from the Effective Date of the Plan, Debtors must cure all pre-petition arrears (including attorney's fees and late charges) in a single lump-sum payment in the approximate amount of $118,157.38.  To the extent arrears are determined to be a different amount, appropriate adjustments will be made in the lump-sum payment.  One West Bank retains its interest in its collateral until paid in full.

**LIQUIDATION ANALYSIS**

<u>In re: ZOUVAS</u>, Chapter 11 Case No. 13-06250-LT11 (Bankr.Cal.S.D.)

(as of 06/16/13)

## ASSETS

| | |
|---|---:|
| 977 Windflower Way, San Diego, CA 92106 | $1,250,000.00 |
| 2368 Second Avenue, San Diego, CA 92101 | $1,400,000.00 |
| Wells Fargo checking/savings accounts | $1,932.26 |
| used home furnishings, televisions and AV equipment | $27,000.00 |
| misc. home decor, various art | $1,000.00 |
| used clothes | $15,000.00 |
| misc jewelry, wedding ring | $10,000.00 |
| various firearms, golf cart, golf clubs, misc. sporting equipment | $6,300.00 |
| 529 Plan for ZZ, EZ (minor children) | $28,000.00 |
| Zouvas Law Group, P.C. (50% ownership) | $89,500.00 |
| 2010 Mercedes-B GL550 (leased vehicle) | $0.00 |
| 2011 Mercedes-Benz S550V (leased vehicle) | $0.00 |
| 450 Yamaha, 450 Honda Quad, Honda 50 | $3,200.00 |
| | **$2,831,932.26** |

## LIABILITIES/EXEMPTIONS

| | |
|---|---:|
| Secured Claims | $2,650,000.00 |
| Exemptions | $57,965.00 |
| Estimated Costs of Sale (6%) | |
| - 977 Windflower Way, San Diego, CA 92106 | $75,000.00 |
| - 2368 Second Avenue, San Diego, CA 92101 | $84,000.00 |
| | **$2,866,965.00** |

| | |
|---|---:|
| Costs of Chapter 7 Administration | n/a |
| DOLLAR AMOUNT AVAILABLE FOR GENERAL UNSECURED CREDITORS: | **0.00** |
| PERCENTAGE AMOUNT AVAILABLE FOR GENERAL UNSECURED CLAIMS: | **0.00** |

B6I (Official Form 6I) (12/07)

In re  Zouvas, Luke _____ ,    Case No. _____
        **Debtor**                                           **(if known)**

# "2ND AMENDED" SCHEDULE I - CURRENT INCOME OF INDIVIDUAL DEBTOR(S)

The column labeled "Spouse" must be completed in all cases filed by joint debtors and by every married debtor, whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.  Do not state the name of any minor child. The average monthly income calculated on this form may differ from the current monthly income calculated on Form 22A, 22B, or 22C.

| Debtor's Marital Status: married | DEPENDENTS OF DEBTOR AND SPOUSE | |
|---|---|---|
| | RELATIONSHIP(S): son, daughter | AGE(S): |

| Employment: | DEBTOR | SPOUSE |
|---|---|---|
| Occupation | Attorney at Law | homemaker |
| Name of Employer | self-employed | n/a |
| How long employed | | n/a |
| Address of Employer | 2368 Second Avenue San Diego, CA 92101 | |

INCOME: (Estimate of average or projected monthly income at time case filed)

| | | DEBTOR | SPOUSE |
|---|---|---|---|
| | "AMENDED" | $ 23,955.00 | $ 0.00 |
| 1. Monthly gross wages, salary, and commissions (Prorate if not paid monthly) | | $ 0.00 | $ 0.00 |
| 2. Estimate monthly overtime | | | |
| 3. SUBTOTAL | "AMENDED" | $ 23,955.00 | $ 0.00 |
| 4. LESS PAYROLL DEDUCTIONS | "AMENDED" | | |
|   a. Payroll taxes and social security | | $ 4,390.00 | $ 0.00 |
|   b. Insurance | | $ 0.00 | $ 0.00 |
|   c. Union dues | | $ 0.00 | $ 0.00 |
|   d. Other (Specify): _____ | | $ 0.00 | $ 0.00 |
| 5. SUBTOTAL OF PAYROLL DEDUCTIONS | "AMENDED" | $ 4,390.00 | $ 0.00 |
| 6. TOTAL NET MONTHLY TAKE HOME PAY | "AMENDED" | $ 19,565.00 | $ 0.00 |
| 7. Regular income from operation of business or profession or farm (Attach detailed statement) | | $ 0.00 | $ 0.00 |
| 8. Income from real property | | $ 6,700.00 | $ 0.00 |
| 9. Interest and dividends | | $ 0.00 | $ 0.00 |
| 10. Alimony, maintenance or support payments payable to the debtor for the debtor's use or that of dependents listed above | | $ 0.00 | $ 0.00 |
| 11. Social security or government assistance (Specify): _____ | | $ 0.00 | $ 0.00 |
| 12. Pension or retirement income | | $ 0.00 | $ 0.00 |
| 13. Other monthly income (Specify): _____ | | $ 0.00 | $ 0.00 |
| 14. SUBTOTAL OF LINES 7 THROUGH 13 | | $ 0.00 | $ 0.00 |
| 15. AVERAGE MONTHLY INCOME (Add amounts on lines 6 and 14) | | $ 26,265.00 | $ 0.00 |
| 16. COMBINED AVERAGE MONTHLY INCOME: (Combine column totals from line 15) | | $ 26,265.00 "AMENDED" | |

(Report also on Summary of Schedules and, if applicable, on Statistical Summary of Certain Liabilities and Related Data)

17. Describe any increase or decrease in income reasonably anticipated to occur within the year following the filing of this document:

_____

"SECOND AMENDED"

B6J (Official Form 6J) (12/07)

In re  Zouvas, Luke _____ ,                    Case No. _____
                **Debtor**                                                                  **(if known)**

## "THIRD AMENDED" SCHEDULE J – CURRENT EXPENDITURES OF INDIVIDUAL DEBTOR(S)

Complete this schedule by estimating the average or projected monthly expenses of the debtor and the debtor's family at time case filed.  Prorate any payments made bi-weekly, quarterly, semi-annually, or annually to show monthly rate. The average monthly expenses calculated on this form may differ from the deductions from income allowed on Form22A or 22C.

[✓] Check this box if a joint petition is filed and debtor's spouse maintains a separate household.  Complete a separate schedule of expenditures labeled "Spouse."

| | |
|---|---:|
| 1. Rent or home mortgage payment (include lot rented for mobile home) | $ 8,775.00 |
|     a. Are real estate taxes included?    Yes _____  No ✓ | |
|     b. Is property insurance included?   Yes _____  No ✓ | |
| 2. Utilities:  a. Electricity and heating fuel | $ 750.00 |
|           b. Water and sewer | $ 110.00 |
|           c. Telephone | $ 400.00 |
|           d. Other  internet bundle | $ 334.00 |
| 3. Home maintenance (repairs and upkeep) | $ 450.00 |
| 4. Food | $ 1,000.00 |
| 5. Clothing | $ 0.00 |
| 6. Laundry and dry cleaning | $ 400.00 |
| 7. Medical and dental expenses | $ 0.00 |
| 8. Transportation (not including car payments) | $ 400.00 |
| 9. Recreation, clubs and entertainment, newspapers, magazines, etc. | $ 95.00 |
| 10. Charitable contributions | $ 0.00 |
| 11. Insurance (not deducted from wages or included in home mortgage payments) | |
|         a. Homeowner's or renter's | $ 218.00 |
|         b. Life | $ 300.00 |
|         c. Health | $ 0.00 |
|         d. Auto | $ 200.00 |
|         e. Other | $ 0.00 |
| 12. Taxes (not deducted from wages or included in home mortgage payments)<br>(Specify)  real property taxes for residence | $ 1,872.00 |
| 13. Installment payments: (In chapter 11, 12, and 13 cases, do not list payments to be included in the plan) | |
|         a. Auto | $ 2,951.00 |
|         b. Other | $ 0.00 |
|         c. Other | $ 0.00 |
| 14. Alimony, maintenance, and support paid to others | $ 0.00 |
| 15. Payments for support of additional dependents not living at your home | $ 0.00 |
| 16. Regular expenses from operation of business, profession, or farm (attach detailed statement) | $ 0.00 |
| 17. Other  monthly mortgage payment for 2368 2nd Avenue real property | $ 6,700.00 |
| 18. AVERAGE MONTHLY EXPENSES (Total lines 1-17. Report also on Summary of Schedules and, if applicable, on the Statistical Summary of Certain Liabilities and Related Data.) | $ 24,955.00 |

19. Describe any increase or decrease in expenditures reasonably anticipated to occur within the year following the filing of this document:

20. STATEMENT OF MONTHLY NET INCOME

| | | |
|---|---|---:|
| a. Average monthly income from Line 15 of Schedule I | "CORRECTED" | $ 26,265.00 |
| b. Average monthly expenses from Line 18 above | | $ 24,955.00 |
| c. Monthly net income (a. minus b.) | "CORRECTED" | $ 1,310.00 |

**EXHIBIT 4 –FEASIBILITY OF THE PLAN**
<u>In re: ZOUVAS</u>, Chapter 11 Case No. 13-06250-LT11 (Bankr.Cal.S.D.)

A requirement for confirmation involves the feasibility of Debtors' Plan.  Debtors

must show that confirmation of the Plan is not likely to be followed by the liquidation, or

the need for further financial reorganization of the Debtors, unless such liquidation or

reorganization is proposed in the Plan.  There are at least two important aspects of a

feasibility analysis. The first aspect considers whether the Debtor will have enough cash

on hand on the Effective Date of the Plan to pay all the claims and expenses which are

entitled to be paid on such date.  The Debtors maintain that this aspect of feasibility is

satisfied as illustrated here:

| | |
|---|---|
| Cash Debtors project to have on hand by Effective Date: | $10,219.02 |
| **To Pay**: Administrative Claims | $5,000.00 |
| **To Pay**: Statutory costs & charges | $0.00 |
| **To Pay**: Other Plan Payments due on Effective Date: | $1,043.00 |
| Balance after paying these amounts: | $4,176.02 |

The sources of the cash that the Debtor will have on hand by the Effective Date, as

shown above are:

| | | |
|---|---|---|
| $ | 7,599.02 | Cash in DIP Operating Account as of 10/31/13 |
| $ | 2,620.00 | Additional cash DIP projects to accumulate by Effective Date |
| $ | 0.00 | Borrowing |
| $ | 0.00 | Other |
| $ | 10,219.02 | **TOTAL** |

The second aspect considers whether Debtors will have enough cash over the

life of the Plan to make the required Plan payments.  Debtors believe that the income

generated from Debtor's employment with the Zouvas Law Group, P.C. will create

sufficient cash flow to make all payments under the Plan, as well as pay personal and

household expenses during the Plan period.  The Debtors believe that their monthly

income generated during their Chapter 11 Plan period will be, on average, approximately

$26,265.00 per month available for the Debtors' use.  <u>See</u> Exhibit 3 hereto.  Debtors

estimate that they will have approximately $24,955.00 in average monthly expenses,

including but not limited to their home mortgage, taxes, and personal living expenses. Thus, the amount that the Debtors expect to be made available to them each month, on average, will be approximately $1310.00.

These figures are approximate figures based on average gross income earned by Debtor Luke Zouvas during 2011 through June 2013.  Debtor's income can, however, fluctuate substantially from month to month.  Overall, though, the Debtors believe that they will earn enough income during the busiest months of the year in order to enable them to meet the payments required by their Plan during slower months of the year.

Debtors will remain current on all post-confirmation obligations while using the proceeds from the income generated after the petition date to treat creditors' claims pursuant to the Plan.   Debtors shall not be required to liquidate exempt assets or other assets that the Bankruptcy Code permits them to retain and they shall retain such assets.  If necessary, Debtors expect that they will be able to borrow funds from family members in order to pay administrative expenses or to cover any temporary cash shortages during the life of the Plan.